George C. Hutchinson, State Bar Number 138735
LEGAL SOLUTIONS 2 U, APC.
16812 Armstrong Ave, Suite 200L
Irvine, CA 92606
Telephone:     (855) 775-2928
Facsimile:     (855) 775-2928

Attorneys for Cross-Complainant, BrandRep, Inc.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JASON ALAN, on behalf of himself and all others similarly situated,. <br><br> Plaintiff, <br><br> vs. <br><br> BRANDREP, INC., <br><br> Defendants. | **CASE NO.:** 8:16-cv-01040-DOC-DFM <br><br> **CROSS-COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION, RESTITUTION, OTHER EQUITABLE RELIEF, AND CIVIL PENALTIES** <br><br> [*Filed Concurrently with Defendant's Answer and Affirmative Defenses*] |
| BRANDREP, INC., on behalf of itself and all others similarly situated, and ROES 1 through 100, <br><br> Cross-Complainant, <br><br> vs <br><br> JASON ALAN, an Individual, and Does 1 through 50 inclusive, <br><br> Cross-Defendants, | **Complaint Filed: 06/03/16** <br> **Trial Date:**       **NONE SET** <br> **Judge:**       **Hon. David O. Carter** |

-1-

Cross-Complainant, BRANDREP, INC. (BRANDREP) alleges on information and belief, and on investigation of facts:

**GENERAL ALLEGATIONS**

**(Facts Common to All Causes of Action – Identity of the Parties)**

1.      Cross-Complainant, BRANDREP, is Delaware Corporation and is now, and at all times mentioned in this complaint is authorized to do business in California and is in good standing.  Its principal place of business is in Orange County, California.

2.      Cross-Defendant JASON ALAN also known as JASON LEONARD ALAN is sued:

a.   in his individual capacity

b.   in his official capacity as an owner, director, partner, and/or agent of Troop Business Services, as a Real Estate Asset Management agent, Mergers and Acquisitions agent, Business Sales agent, Commercial Real Estate Agent,

c.   in his official capacity as an owner, director, partner, and/or agent of labizagent.com,

d.   in his official capacity as an owner, director, partner, and/or agent of Jason Alan Photography, Inc.,

e.   in his official capacity as an owner, director, partner, and/or agent of A1 24 Hr Plumbing and Drain Alhambra, A1 24 Hr Plumbing and Drain LA, A1 24 Hr Plumbing Beverly Hills, A1 24 Hr Plumbing and Rooter Beverly Hills, A1 Plumbing and Drain Beverly Hills, 24 Hr Plumbing and Rooter W Hollywood, 24 Hour Rooter and Drain Burbank, 24 Hour Plumbing and Drain Burbank, 24 Hour Rooter and Drain Burbank, Rooter and Drain Burbank, A1 Burbank Rooter and Drain, 24 Hour Plumbing and Drain Glendale, Glendale Emergency Plumbing, and

f.   in his official capacity as an owner, director, partner, and/or agent of other businesses including but not limited to the business of being a Plaintiff for the purpose generating

profits for himself AND/or for law firms as a Plaintiff business and not in a capacity of a harmed Plaintiff.  Jason Alan is an individual and is now, and at all times mentioned in this complaint was a resident of Los Angeles, California.

3.      Cross-Defendant DOES 1 THROUGH 25 are sued in their individual capacities and in their official capacities as owners, partners, or associates of certain California based law firms, and as such DOES 1 through 25 have at all relevant times directed and controlled the business activities of those law firms.

4.      The true names and capacities of the Cross-Defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Cross-Complainant at the time of filing this Cross-Complaint and Cross-Complainant, therefore, sues said Cross-Defendants by such fictitious names and will ask leave of court to amend this Cross-Complaint to show their true names or capacities when the same have been ascertained.  Cross-Complainant is informed and believes, and therefore alleges, that each of the DOE defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Cross-Complainant as herein alleged.  Whenever reference is made in this complaint to "Cross-Defendants" such reference shall include DOES 1 through 50, and JASON ALAN.

5.      ROES 1 through 100, are persons who may be entitled to bring this action and said fictitious parties are named herein pursuant to and as required by California Code of Civil Procedure Section 382 and plaintiffs will seek leave of the Court and amend this cross-complaint to show the true names and relationships of said ROES once those names have been ascertained.

6.      Each Cross-Defendant was at all relevant times the co-conspirator, employee, servant, partner, joint venturer, successor, assign, aider or abettor of one or more other Cross-Defendants with respect to the wrongful conduct alleged herein and did encourage, facilitate, or assist in the commission of the unlawful acts alleged herein.  In addition, each Cross-Defendants were acting within the course and scope of said conspiracy, agency, employment and/or joint

venture and with the permission and consent of each other, and each is responsible and liable in some manner for the damages or injuries sustained or threatened to be sustained by Cross-Complainant.

7.     Whenever in this cross-complaint reference is made to any act of Cross-Defendants, such allegation shall be deemed to mean the act of each Cross-Defendant acting individually and jointly with the other Cross-Defendants named in that cause of action.

8.     The violations alleged herein have been and are being carried out within Los Angeles County and elsewhere in the state.

9.     When reference in this cross-complaint is made to any act or transaction of a cross-defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that said cross-defendant and its owners, officers, directors, agents, employees, or representatives did or authorized such acts while engaged in the management, direction, or control of the affairs of defendants and while acting within the scope and course of their duties.

10.     Whenever in this cross-complaint reference is made to any act of any individual cross-defendant, such allegation shall be deemed to mean that said cross-defendant is and was acting (a) as a principal, (b) under express or implied agency, and/or (c) with actual or ostensible authority to perform the acts so alleged on behalf of every other cross-defendant herein.

11.     Whenever in this cross-complaint reference is made to any act of cross-defendants, such allegation shall be deemed to mean the act of each cross-defendant acting individually and jointly with the other cross-defendants named in that cause of action.

## INDISPENSIBLE PARTIES TO THE FACTUAL ALLEGATIONS SET FORTH HEREIN

12.     Cross-Complainant is informed and believes and thereupon alleges that the acts of DOES 1 THROUGH 50, and JASON ALAN are similar in nature to what was committed upon

Cross-Complainant as herein alleged. Cross-Complainant is informed and believes and thereupon alleges that Cross-Defendants encouraged and aided EACH OTHER in acts described herein.  Cross-Complainant is informed and believes and thereupon alleges that EACH CROSS-DEFENDANT, expressly or impliedly, assumed all rights and liabilities of EACH OTHER's actions and thereby became liable to Cross-Complainant for all liabilities arising under the tortious acts of EACH OTHER.

13.     Cross-Complainant is informed and believes and thereupon alleges that wrongful conduct committed by CROSS-DEFENDANTS were apparent on the face of the acts being committed and systematically conducted to take advantage of the costs associated with litigation in order to extract settlements from unsuspecting Defendants tied to litigation similar to those acts coined as "legalized extortion" during the TREVOR LAW GROUP incident of 2003 and 2004 as described in greater detail below.

14.     Cross-Complainant alleges that at the time of JASON ALAN's conduct described herein JASON ALAN and DOES 1 through 50 "assumed" the rights and liabilities of taking advantage of unsuspecting businesses within the general public with notice and knowledge of the wrongful conduct committed against BRANDREP and the general business public by EACH OTHER CROSS-DEFENDANT.  Additionally, Cross-Complainant alleges that EACH OF THEM and all Cross-Defendants knowingly reaped the benefits of and continue to reap the benefits in their non-litigation related conduct such as advertising JASON ALAN's cell phone number as a business on numerous online business directories, search engines, and websites so as to solicit lawful business calls for the purpose of filing fraudulent claims obtaining fraudulent judgments utilizing the Telephone Consumer Protection Act (TCPA) and other violations.[1]

15.     Cross-Complainant alleges that at the time of JASON ALAN's conduct described

---

[1] The TCPA was enacted to " 'protect the privacy interests of … telephone subscribers by placing restrictions on unsolicited, automated telephone calls . . . by restricting certain uses of … automatic dialers.' " (*Satterfield v. Simon & Schuster, Inc.* (9th Cir. 2009) 569 F.3d 946, 954; *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 149.)

herein JASON ALAN and DOES 1 through 50 "assumed" the rights and liabilities of taking advantage of unsuspecting businesses within the general public with notice and knowledge of the wrongful conduct committed against BRANDREP and the general business public by EACH OTHER CROSS-DEFENDANT. Additionally, Cross-Complainant alleges that EACH OF THEM and all Cross-Defendants knowingly reaped the benefits of and continue to reap the benefits in their non-litigation related conduct such as advertising JASON ALAN's non-cell phone numbers as a business on numerous online business directories, search engines, and websites and had these non-cell phone lines forwarded to cell phones so as to solicit lawful business calls for the purpose of filing fraudulent claims obtaining fraudulent judgments for Telephone Consumer Protection Act (TCPA) and other violations.

16.     Cross-Complainant is informed and believes and thereupon alleges that Cross-Defendants and each of them have benefited and continue to benefit from the wrongful conduct committed upon Cross-Complainant and the general public. Cross-Complainant alleges that all Cross-Defendants knowingly conspired with one another in the "aiding and abetting" of EACH OTHER's actions and therefore, each of them should be jointly and severally or at least vicariously held liable. Cross-Complainant alleges that Cross-Defendants are "indispensible parties" to this matter and therefore, should not be dismissed from this complaint. EACH CROSS-DEFENDANT has secretly positioned themselves to unfairly, unethically, and tortuously gain a competitive advantage by exploiting the vulnerability of the general business and consuming public which flows from the nature of the relationship each of them had with each other. More specifically, Cross-Defendants have secretly positioned themselves to unfairly, unethically, and tortuously gain a competitive advantage by creating fake businesses that do not exist and attach a telephone number and/or address on business directories or other online sites in order to have unsuspecting businesses or consumers call Cross-Defendants in order for these Cross-Defendants to initiate the filing of litigation for an improper purpose as described in greater detail below, or to position themselves to extract settlements through the use of improper

and unprotected non-litigation tactics.  At minimum, their actions mislead businesses and consumers into believing that the businesses advertised are legitimate and actual businesses, when the truth of the matter is that these businesses do not actually exist.

17.     Cross-Complainant alleges that any damages incurred by Cross-Complainant were caused by Cross-Defendants' wrongful conduct as herein alleged.

## JURISDICTION AND VENUE

18.     Venue is proper in the County of Los Angeles because one or more of Cross-Defendants' acts were engaged in this County.  Additionally, this court is the proper Venue to bring this action because one or more of the violations alleged herein arose within the County of Los Angeles.

## TREVOR LAW GROUP BACKGROUND AND SIMILARTIES WITH CROSS-DEFENDANT'S ACTIONS

19.     The TREVOR LAW GROUP was a Beverly Hills law firm notable in California and nationally for what is alleged as their heavy-handed tort law abuse.  In 2002, it was alleged that TREVOR LAW GROUP engaged in a form of extortion by threatening to sue or improperly suing multiple businesses for various violations of law.  All principals of TREVOR LAW GROUP were recommended by the State Bar of California for disbarment and were ordered to be inactive members of the State Bar of California within 3 days of the State Bar's order.

20.     Not only was TREVOR LAW GROUP named in a complaint filed by the State Bar of California against all principals of TREVOR LAW GROUP (TREVOR) for disbarment, but TREVOR and their named Plaintiff CONSUMER ENFORCEMENT WATCH CORPORATION (CEWC) were *also* named as defendants in a very serious complaint filed by the California Attorney General's office.

21.     TREVOR's plaintiff CEWC had sued multiple businesses and utilized tort liability and various statutes in order to make being a plaintiff a business for profit.

22.     The California Attorney General's office filed suit against TREVOR and CEWC for allegedly trying to "shake down" or "extort" California businesses by extracting settlements through the use of litigation.  These acts constituted acts that were not protected under free speech, protected speech, or under litigation privilege.

23.     The courts can't deny that, irrespective of right or wrong, a defendant is more likely to settle claims than allow privacy and confidentiality to be compromised through a complaint and filings posted in the public domain and through the invasion of privacy and the costs associated with such invasion under the guise of litigation discovery asking for proprietary business records.  Additionally, defendants must weigh the cost of settlement against the cost of retaining an attorney for litigation and enter into settlement that would theoretically cost less than pursuing a case to trial.  In other words innocent Business Defendants are specifically targeted and are indecorously compelled to settle frivolous cases rather than pursue a costly litigation, hence the coined phrase "legalized extortion".

24.     The court can't deny that costs of filing a suit in most circumstances is less than $500.  However, the extracted settlement is in the thousands and with multiple defendants those settlements amount to hundreds of thousands if not millions in extracted settlements.  Therefore the business of litigation for profit has been a well thought out scheme or business venture in such cases as TREVOR and CEWC.

25.     The Attorney General's complaint against TREVOR and CEWC sought full restitution of money acquired by the defendants.  The lawsuit also asked for $1 million in civil penalties, for TREVOR to drop all current and pending lawsuits that they brought under certain tort law, and the complaint sought a permanent injunction barring TREVOR and CEWC from filing any new lawsuits under their favored tort liability without court approval.

26.     The TREVOR incident was a "boom" heard nationally. California voiced

loudly and clearly that the use of law as an extortion tool is neither protected nor accepted. California has made notable record that the act of being a Plaintiff purely for profit purposes is not going to be condoned.  In fact, the state of California resulting from the TREVOR incident initiated in 2003 changed one of the strongest pro-consumer laws in the state.

27.     The design here as in TREVOR is generally masterminded by an attorney or set of attorneys as a method of generating "easy" money through litigation (that would not exist otherwise for the law firm or at a much lesser dollar figure and volume) with little or limited litigation costs (complaint filing fee is under $500) with huge upside potential in extracting settlement amounts in the thousands or more.  The design is usually masterminded and founded on a litigation with a settlement offer being extracted from defendants on the presumption that settlement would in some cases cost less than the initial retainer that must be placed with most attorneys in order to defend such actions, and in other cases settlement would cost less and be less burdensome than the costs of taking the case all the way through trial, and in other cases a settlement would be less burdensome than going through litigation and divulging confidential business secrets, or facing the threat of losing the business altogether to financial destruction resulting from frivolous litigation and damage to the businesses good name.  As in TREVOR the key to these type of litigation based "extortion" tactics revolves around either volume in the amount of cases to pursue for the purpose of generating nominal damages and/or large settlements (generating a lucrative litigation practice for attorneys and plaintiff), and/or payment of attorney's fees.

28.     In some of these cases, law firms will often use their staff as named plaintiffs, use the same plaintiff on multiple lawsuits, and/or use substantially similar or identical complaints against multiple unrelated defendants, substantially similar or mirror allegations or violations of a particular body of law.

29.     Here, Cross-Complainant alleges that Cross-Defendants mirror the TREVOR incident by finding and utilizing a tort law that allows them a tool to blindly sue businesses for

the sole pecuniary benefit of extracting settlements for profit both for the Plaintiff and the Plaintiff's attorneys with no real benefit to the general public.

30.     However, in TREVOR the defendants were pulled from such locations as the Bureau of Automotive Repair website listing what Defendants violated which actual statutes.  In other words TREVOR sued Defendants that were alleged to have violated the law without any assistance by TREVOR or its plaintiff.  Here, unlike TREVOR, the Cross-Defendants are alleged to have crossed boundaries FAR BEYOND the TREVOR LAW GROUP, in that here Cross-Defendants are alleged to have created new scheme to defraud by setting up multiple sham businesses, listing those sham businesses online on business directories such as YellowPages.com (aka yp.com) and other directories or other online search locations inducing calls to Cross-Defendant's telephone numbers.  In other words, unlike TREVOR, here the Cross-Defendants have induced, created, produced, and/or manufactured their own lawsuits and defendants much like an automobile factory would manufacture its own cars.  The alleged violations would not exist absent Cross-Defendants specific acts as alleged throughout this cross-complaint.

31.     The Plaintiff is a private for-profit enterprise whose primary function is to bring actions against purported defendants accused of violating a statute.

32.     Defending these actions are difficult because of the broad reaching aspect of the statutes chosen, or the tricky tactics used by the Cross-Defendants.


**SPECIFIC ALLEGATIONS**

33.     Cross-Complainant alleges that from 2006 to the present Jason Alan operated active business listings, websites, and other online media postings using his cell phone number ending in 7456 or non-cell phone numbers with the prefix 323-693-xxxx for business purposes.

34.     Cross-Complainant alleges that by publicly posting his cell phone and non-cell phone numbers online including on his own website JASON ALAN controlled, operated,

drafted, and edited those websites and online mediums that Cross-Defendants, including JASON ALAN, provided a worldwide public written consent to contact him on those telephone numbers.

35. Despite the written consent provided to the general public including BRANDREP, JASON ALAN as a plaintiff/Cross-Defendants and DOES 1 through 25 (attorneys) in this cross-complaint have made a profit center out of extracting money from businesses for allegedly pre-recorded business to business calls protected under the TCPA creating a chilling effect against businesses conducting legitimate business to business calls to JASON ALAN's cell phone and/or non-cell phone numbers.

36. JASON ALAN fraudulently alleges that he did not give consent to call his cell phone.

37. JASON ALAN has also devised a scheme which is alleged to include forwarding business to business landline calls to his cell phone in order to fraudulently alleges that he did not give consent to call his cell phone, in an attempt to falsely claim that he is afforded protection of the TCPA regulations.

38. JASON ALAN attempts to gain judgments through this fraud, by falsely representing that he did not give consent to call his cell phone number when in fact he has given a worldwide written consent for business calls and solicitation to his cell phone.

39. JASON ALAN attempts to afford himself of TCPA regulations on B2B landline calls which are generally excluded from TCPA and DNC regulations by forwarding those non-cell phone calls to his cell phone and non-cell phone numbers.

40. The legal proceedings brought by JASON ALAN against various businesses are incidental to JASON ALAN's act of engaging in a deceptive scheme by publishing his cell phone and non-cell phone numbers with multiple online directories, and websites so as to induce innocent business to business calls, including pre-recorded business messages, to JASON ALAN's publicized numbers, which forms the basis of JASON ALAN's extortive demands for compensation and civil lawsuits.

41.    JASON ALAN in so doing also misleads the general public by advertising emergency plumbing and other businesses that do not exist to the general unsuspecting consuming public.

42.    At all times JASON ALAN was operating an active ongoing business or fake business listed with his phone numbers giving a worldwide consent to call his telephone numbers in order to lobby calls to his cell phone so that he may subsequently misrepresent that he never gave consent to call his phone in order to make out a private right of action under the TCPA and/or DNC.

## CROSS-DEFENDANTS' BUSINESS PRACTICE

43.    Cross-Defendants represent that they are in the business of enforcing consumer laws, including TCPA actions, through litigation. Cross-Defendants are actually in the business misleading the general public with false postings of businesses that they do not have and of extracting money from businesses under the guise of purporting to enforce consumer protection laws by engaging in the following scheme.

44.    From at least April 2015 Cross-Defendants corroborated and conspired together for the purpose of having a named plaintiff in their litigation.  JASON ALAN (whose full name is JASON LEONARD ALAN) is the owner of this criminal enterprise as the named Plaintiff.

## SCHEME 1

45.    Jason Alan (and Cross-Defendants) posts his cell phone number ending in 7456 online providing a worldwide written consent to be called on his cell phone.

46.    Jason Alan actively solicits calls to his cell phone using these online written, and video requests.

47.    Third party Companies or lead source companies verify that the 7456 number

listed is for business purposes and have gone through a verification process creating written consent and acknowledgment that calls will be made his cell phone.

48.     These third party companies then sell leads to companies like BRANDREP and others as "verified leads".

49.     Jason Alan then attempts to claim that his "privacy" has been violated as he pursues TCPA and other claims, knowing full well that Jason Alan induced, coerced, solicited, demanded, and requested that calls are made to his cell phone.

50.     Companies such as BRANDREP are then damaged by buying these bad leads because no true business advertised by Jason Alan exists.  However, a fabricated business exists in order to to fabricate, create, and/or devise a new scheme to litigate against businesses who call his cellphone.

51.     BrandRep and others are thereby duped into calling Jason Alan and/or paying for bad leads.

**SCHEME 2**

52.     Jason Alan and/or Cross-Defendants purchased a number of purported landline telephone numbers with the prefix 323-693-xxxx, including but not limited to 323-693-0225.

53.     These telephone numbers are eventually posted online.  More specifically, on November 3, 2015 more than 10 of these numbers owned and operated by Cross-Defendants were posted on yp.com (aka yellowpages.com) all advertising emergency plumbing, drain, and/or rooter services.

54.     Cross-Defendants, including Jason Alan must accept terms of service from third party online directories such as yp.com that include in pertinent part:

"... *Advertiser acknowledges that the essential value of the Services is the dissemination of information facilitating individuals to visit, contact, and/or learn more about*

*Advertiser…*

*…ADVERTISER ASSUMES ALL RISKS CONCERNING THE FUNCTIONALITY, PERFORMANCE, AND RESULTS OF THE ADVERTISING AND SERVICES…*

*… Advertiser waives all provisions of state and federal so-called "Do Not Call," "Do Not E-mail," and "Do Not Fax" laws in respect to YP Parties' placement of telephone calls, e-mails, and faxes to Advertiser, and Advertiser agrees to accept such phone calls, faxes, e-mails, and other communications sent by or on behalf of YP Parties related to YP's services, including future services…"*

55.     Cross-Defendants must verify that they own the telephone number posted by answering an automated call initiated by the online directory and entering a code provided exclusively to the person owning, holding, or in control of the telephone in order to enter the code posted online into the telephone automating a verification process using the posted telephone number.

56.     Cross-Defendants are then sent an e-mail which requires activity by the owner, holder, or person in control of that telephone number and e-mail address in order for the free online posting of the telephone number to be activated and posted on the online directory.

57.     Cross-Defendants have engaged in a practice of doing this for more than 5 telephone numbers causing telephone numbers owned, operated, and in control of Cross-Defendants to be called.

58.     Third party companies then generate leads for businesses like BRANDREP to buy claiming that the leads are "verified".

59.     BRANDREP and others then expend money purchasing these bad leads because the truth of the matter is that Cross-Defendants are not in the plumbing business and do

not own the businesses listed online.

60.        Cross-Defendants knew at the time of posting their telephone numbers online that:

        a.   They did not own the businesses listed in the directories,

        b.   They have provided written consent to call their numbers and took active steps to verify that written consent to allow calls to their telephone numbers.

### Cross-Defendants' Lack of Investigation or Intentionally Scheme Before Initiating Suit

61.        Cross-Defendants use boilerplate complaints to bring suit against businesses for TCPA and/or DNC violations and in some cases the telephone numbers Plaintiff claims belongs to Defendants do not even belong to the Defendant businesses.

62.        Cross-Defendants' boilerplate lawsuits describe laws and regulations governing TCPA and/or DNC.  Cross-Defendants allege "on information and belief" that each of the named businesses were "invading Plaintiff's privacy".  Cross-Defendants are alleged to refrain from investigating the true facts in the filings of these boilerplate complaints., or intentionally disregarding the true facts in the filings of these boilerplate complaints.

### Cross-Defendants' Filing Against Unrelated Businesses

63.        Cross-Defendants, claiming to assert the interest of the general public, file mass actions under the authority of the TCPA and/or DNC against multiple unrelated businesses utilizing the scheme described herein.

64.        Cross-Defendants have filed at least 14 different lawsuits generated or manufactured in the methods described in this cross-complaint.  Cross-Complainant alleges that greater than 22 different lawsuits were filed by Cross-Defendants against hundreds if not thousands of unrelated businesses under the same boilerplate allegations.  In each of these lawsuits there is no connection among the businesses named or the conduct cited in each of the

lawsuits.  The only apparent commonality of the businesses named in each lawsuit is that they are subject to the jurisdiction where JASON ALAN resides.

65.      However, on the other side of the coin, the commonality bringing JASON ALAN's defendants to court (for extortive purposes) is the intentional and public display of his telephone number online directing or redirecting calls to his cellphone number.

66.      The volume of unrelated Business Defendants with the exact same Cross-Defendants is a clear and unequivocal suggestion of Cross-Defendants scheme for profit.

67.      The volume of false businesses listed online directing or redirecting calls to JASON ALAN's telephone numbers is a clear and unequivocal suggestion of Cross-Defendants scheme for profit.

**Cross-Defendants' Settlement Scam**

68.      Shortly after filing of the initial complaint and before filing for class certification or obtaining class certification, Cross-Defendants seek to obtain a quick settlement. The complaint itself serves as the demand letter seeking $1,500 in damages for each call in violation of the TCPA.

69.      When the exact amount proposed in the complaint is offered for settlement, Cross-Defendants claim that they see the "case as certifiable" for class purposes and they will "push hard for class-wide resolution".

70.      In those situations where businesses sued by Cross-Defendants obtain legal representation, Cross-Defendants often send to the attorney for such business a form email in which they seek to examine business records of the business as "early discovery between the parties" is encouraged by the court to "ensure good faith compliance with the LR 23-3 deadlines [for class certification] deadlines here, and do not anticipate the Court will grant a lengthy extension on that deadline."

71.      Yet, Cross-Complainant alleges that most complaints filed by Cross-

Defendants serve to extract settlement with no real intent on Cross-Defendants' to qualify the boilerplate complaint for class certification.

72.     If Cross-Defendants settled with all of the businesses they actually sued by name, the range of settlement they are estimated to collect would be in the hundreds of thousands if not millions.  Cross-Defendants, of course, potentially could receive even more because Does 1 through 25 could be using other Plaintiffs other than JASON ALAN to further their scheme to extract settlement using the litigation tactics described in this Cross-Complaint, concealing JASON ALAN's name so as to attempt to legitimize the actions of Cross-Defendants.

## Cross-Defendants' Settlement With No Public Benefit

73.     Even though Cross-Defendants claim that their actions are filed as class actions in the public interest, they seek to settle their cases on individual basis using the "class" allegation to increase the amount of settlement value by threatening a costly or financially destructive condition for Defendants if settlement is not reached early on.  Cross-Defendants also seek to settle their cases by utilizing a secret, confidential settlement.  In this document Cross-Defendants purport, on behalf of the general public, to release all claims against the business that were alleged in the complaint.  The settlement agreement contains a confidentiality clause that creates a cause of action for cross-defendants should the business breach the confidentiality provision.

74.     The type of settlement described above not only prevents the public from discovering the settlement amount, but also precludes the public from knowing the other terms of the agreement by which the interests of the public are purportedly being served.

75.     Even in those instances where Cross-Defendants do win a case, no injunction prohibiting any purported unlawful act is requested in the Prayer for Relief.  Thus, Cross-Defendants' business is not one of representing the public in enforcing consumer laws, but of abusing those laws for private gain.

**Splitting of Attorney's Fees With Non-Attorneys**

76.     Cross-Defendants DOES 1 through 25 enter into a fee agreement with Cross-Defendant JASON ALAN and other named Plaintiffs whereby Cross-Defendants 1 through 25 agree that each would receive a portion of any recovery obtained from the litigation filed by Cross-Defendants.

77.     The settlement agreement requires monies to go towards recovering Cross-Defendants fees and costs, and does not break down the payment of the settlement amount among attorney's fees, cost of investigation, and court fees.  Accordingly, a portion of the fees and costs, which by definition includes attorney's fees, accrues to non-attorney Cross-Defendants such as JASON ALAN.

78.     Bye way of example the chart below summarizes the summary of similarities between TREVOR and the Cross-Defendants.

//

//

//

//

//

//

//

//

//

//

//

//

//

-18-

CHART 1.1

|  | **TREVOR LAW GROUP** | **CROSS-DEFENDANTS** |
|---|---|---|
| Volume number of complaints | X | X |
| Plaintiff uses litigation to generate profit | X | X |
| Boilerplate complaint used | X | X |
| Quick settlements are encouraged in order to avoid devastating effects on business | X | X |
| Litigation is pecuniary motivated | X | X |
| No real public benefit | X | X |
| 1 plaintiff used on multiple complaints | X | X |

**FIRST CAUSE OF ACTION**

**(VIOLATIONS OF CALIFORNIA BUSINESS**

**AND PROFESSIONS CODE SECTION 17200)**

**Brought By CROSS-COMPLAINANT against ALL Cross-Defendants**

79.     Cross-Complainant hereby incorporates each and every allegation contained above and all previous paragraphs of all previous sections, inclusive, as though fully set forth herein.

80.     Cross-Defendants and each of them, have engaged in and continue to engage in the following, among other, acts of unfair competition as defined in Business and Professions Code Section 17200:

A. Establishing and maintaining the plan of filing litigation and attempting to secure settlements of such litigation in the manner more particularly described above, which are incorporated herein as though set forth in full.

B. Cross-Defendants have abused the process of law in that they have used the judicial process with an ulterior purpose aimed at an objective which is not legitimate.  Cross-Defendants have abused the process of law in the following way:

      i. Cross-Defendants have instituted volume litigation in which they assert they are acting on behalf of the interest of the general public. Cross-Defendants real purpose is to obtain monetary payment for themselves to which they are not entitled. Cross-Defendants only seek moneys which they denominate as being for fees, including attorney's fees, and costs, and which only accrue directly to the benefit of Cross-Defendants.

      ii. Cross-Defendants have filed mass lawsuits prior to making adequate investigation to ascertain the facts necessary to establish their case, or have completely disregarded the true facts necessary to establish a valid case.  Their improper purpose is to conduct volume litigation with minimal overhead so as to maximize their profits from settlements.

      iii. In the course of settlement, Cross-Defendants falsely represent to the businesses that settlement with Cross-Defendants will preclude lawsuits by others on these same facts. Judgments obtained by defendants also claim that businesses cannot be sued again for the underlying conduct, or that Cross-Defendants won't actively solicit another class representative.

iv.  In the course of settlement, Cross-Defendants falsely represent to the businesses that settlement with Cross-Defendants will help keep the business active in that a threat of a class getting certified the business will surely go out of business if settlement is not reached prior to class certification.

C.  Cross-Defendants have engaged in the practice of filing lawsuits and having as part of their settlement strategy, an attempt to obtain money from businesses under threat of causing these businesses unlawful injury in the form of financial harm or invading the business' privacy by Cross-Defendants. Cross-Defendants do so by entwining these businesses in protracted, nonmeritorious lawsuits that were filed without adequate investigation, or through fraudulent means of becoming a plaintiff, and which result in businesses being compelled to expend substantial amounts of money to defend these actions.

D.  Cross-Defendants, in filing suit, assert the interest of the general public. However, Cross-Defendants attempt to conclude, and have succeeded in concluding, cases on individual basis, in many cases through confidential settlements, backed by the threat of suing a business which breaches the confidentiality provision. In concealing their compromise of the public interest in order to benefit themselves, Cross-Defendants have committed an unfair practice.

E.  Cross-Defendants have committed an unfair practice by attempting to obtain, in the guise of fees and expenses, civil penalties which may only be awarded in actions brought by the public officials and agencies set forth in the TCPA and DNC regulations.

F.  Pursuant to the agreement between Cross-Defendants, Cross-Defendant JASON ALAN is to receive a portion of the monetary recovery obtained from the TCPA and/or DNC litigation filed by Cross-Defendants. Cross-Defendant JASON

ALAN is not entitled to recover any moneys from an action brought under the TCPA and/or DNC except for a nominal statutory amount.

## SECOND CAUSE OF ACTION

**(VIOLATIONS OF CALIFORNIA BUSINESS**

**AND PROFESSIONS CODE SECTION 17200)**

**Brought By CROSS-COMPLAINANT against DOES 1 - 25**

81.     Cross-Complainant hereby incorporates each and every allegation contained above and all previous paragraphs of all previous sections, inclusive, as though fully set forth herein.

82.     DOES 1 through 25 ("Attorney Cross-Defendants") have engaged in and continue to engage in, the following, among other, acts of unfair competition as defined in Business and Professions Code section 17200:

A. Attorney Cross-Defendants commit the practice of conspiring with named plaintiffs to post telephone numbers online and advertise false businesses using plaintiff's number(s).

B. Attorney Cross-Defendants commit the practice of exciting groundless judicial proceedings.

C. Attorney Cross-Defendants commit the practice of instituting volume litigation without probable cause and for the purpose of harassing businesses into settling, as described throughout this complaint, incorporated by reference herein as though set forth in full.

D. Attorney Cross-Defendants commit the practice of encouraging and facilitating the commencement and maintenance of abusive litigation by engaging in the scheme described throughout this complaint, incorporated by reference as though set forth in full.

E.  By failing to make an inquiry reasonable under the circumstances regarding the conduct of the businesses, prior to filing suit against these businesses, defendants have violated Code of Civil Procedure section 128.7, subdivision (b).

### **THIRD CAUSE OF ACTION**

**(VIOLATIONS OF UNFAIR BUSINESS PRACTICES)**

**Brought By CROSS-COMPLAINANT against ALL CROSS-DEFENDANTS**

83.  Cross-Complainant hereby incorporates each and every allegation contained above and all previous paragraphs of all previous sections, inclusive, as though fully set forth herein.

84.  Cross-Complaint alleges that that injury sustained is financially debilitating, the time and attention taken away from key executives to defend such litigation is unnecessary, the time and money it costs to call fake or false businesses, are amongst some of the injuries sustained by Cross-Complainant and others.  Therefore the Cross-Complainant alleges that the INJURY IS SUBSTANTIAL.

85.  THE DAMAGE/INJURY of wasting time on calling false or fake businesses OUTWEIGHS BENEFITS TO CONSUMERS/PUBLIC

86.  THE DAMAGE/INJURY of defending frivolous litigation OUTWEIGHS BENEFITS TO CONSUMERS/PUBLIC by posting false ads or businesses online.

87.  IT IS IMPOSSIBLE TO AVOID THE INJURY/DAMAGE IMPOSED on Cross-Complainants because of the open online method for which Cross-Defendants' numbers are advertised.

88.  IT IS IMPOSSIBLE TO AVOID THE INJURY/DAMAGE IMPOSED by Cross-Complainants because Cross-Defendants scheme is so aggressive that multiple numbers are used to publicize emergency business services online, such as plumbing, with numerous telephone numbers and addresses generating a high degree of

popularity that calling Cross-Defendants, including Jason Alan is unavoidable.

89. The court and the judicial proceeding is designed to protect harmed plaintiffs and not created as a scheme to extract or extort fraudulent settlements for profit.  Therefore Cross-Complainant alleges that Cross-Defendants business and/or litigation tactics violate established public policies, or at minimum are immoral, unethical, oppressive or unscrupulous and causes injury which outweighs any purported benefits alleged by Cross-Defenants.

90. Cross-Complainant alleges that the harm created by Cross-Defendants actions grossly outweighs any possible utility of the Cross-Defendants conduct.

91. Litigation is supposed to be initiated for honest and fair reasons and not to harass or oppress another.  Attorneys are judicial officers of the court and are not supposed to pursue litigation solely for financial gain and owe a duty of candor, fairness, and honesty to the judicial branch and the general public.  Cross-Complainants allege that Cross-Defendants and each of them have violated constitutional, statutory or regulatory provisions governing honesty and fairness.

92. Advertising of telephone numbers online and in directories provides the general public a written consent to contact the telephone numbers.  By posting their telephone numbers Cross-Defendants induce calls to their numbers through a process tainted by fraud, causing harm to those who waste their time calling or who pay for leads listing Cross-Defendants numbers.

93. In so doing, Cross-Defendants knowingly deprived members of the public and Cross-Complainant of an opportunity to avoid calling Cross-Defendant, Jason Alan, and opportunities to present a fair hearing to a court of competent jurisdiction, and undermine the legitimacy of the judicial processes.  Cross-Defendants suppression of the material and significant true information was an act of unfair competition.

94. Cross-Defendants' actions deprived the public, Cross-Complainants, and all others

affected of a litigation process and opportunities to avoid litigation untainted by fraud.  The process was so tainted by fraud as to lack all legitimacy, and constituted a fraud and sham.

95.   Defendants wrongful conduct, as herein alleged, constitutes ongoing unlawful and/or unfair activity and continuing violation of Unfair Business Practice.  As such, the Court is justified to issue an injunction in order to prevent cross-defendants from continuing to accumulate unjust profits at the expense of Cross-Complainants and the general public from competing unfairly with other law-abiding California businesses. The Court is also justified to order cross-defendants to restore to any person in interest any money, which have been acquired by such means.

## FOURTH CAUSE OF ACTION

### (DECLARATORY JUDGMENT)

**Brought By CROSS-COMPLAINANT against ALL CROSS-DEFENDANTS**

96.     Cross-Complainant hereby incorporates each and every allegation contained above and all previous paragraphs of all previous sections, inclusive, as though fully set forth herein.

97.     Cross-Defendants post misleading advertising online to the general public, go through a verification process, and consent to be called then claim a violation of privacy has occurred and that calls to numbers posted online violate TCPA, DNC, and other regulations, and then threaten lawsuits against BRANDREP and others on this basis.

98.     An actual, present and justiciable controversy has arisen between Cross-Complainants and Cross-Defendants concerning Cross-Defendants, including BRANDREP's, rights to call telephone numbers posted online.

99.     BrandRep, on its behalf and on behalf of others similarly situated, seek declaratory judgment from this Court that its current policy regarding calls to telephone numbers

posted online constitutes express written consent and therefore is exempt from TCPA regulations.

**Wherefore,** Cross-Claimant prays for judgment against the Cross-Defendants, as follows:

1.  Enter judgment according to declaratory relief sought;

2.  Pursuant to Business and Professions Code section 17203, that Cross-Defendants and each of them, personally or through their successors, agents, representatives, employees, and any and all other persons who act under, by, through, or on behalf of Cross-Defendants be permanently restrained and enjoined from:

    A.  Failing to dismiss all suits brought under authority of the TCPA or DNC

    B.  Filing any new actions under authority of the TCPA or DNC except with the express prior approval of this Court.

3.  That Cross-Complainant have such other and further relief as the nature of the case may require and the court deems proper, including an order that Cross-Defendants make full restitution of all money or other property that they may have acquired by their violation of Business and Professions Code sections 17200 et seq.

4.  That Cross-Complainant recover its costs.

Dated: 08/03/2016

Respectfully submitted,
LEGAL SOLUTIONS 2 U, APC

By: / s / GEORGE C. HUTCHINSON, ESQ.
_____
George C. Hutchinson, Esq.
Attorneys for Cross-Complainant
BRANDREP, INC.